Matter of Gimber v Eastman Kodak Co. (2020 NY Slip Op 01875)





Matter of Gimber v Eastman Kodak Co.


2020 NY Slip Op 01875


Decided on March 16, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 16, 2020

529057

[*1]In the Matter of the Claim of Sandra Gimber, Claimant,
v
Eastman Kodak Company et al., Appellants, and International Paper Company et al., Respondents. Workers' Compensation Board, Respondent.

Calendar Date: February 19, 2020

Before: Garry, P.J., Clark, Devine, Pritzker and Colangelo, JJ.


Hamberger & Weiss LLP, Buffalo (Mary Kay LaForce of counsel), for appellants.
Williams & Williams, Buffalo (Jared L. Garlipp of counsel), for International Paper Company and another, respondents.



Pritzker, J.
Appeal from a decision of the Workers' Compensation Board, filed November 13, 2018, which ruled that apportionment did not apply to claimant's workers' compensation claim.
Claimant's husband (hereinafter decedent) died in November 2013 and she thereafter applied for workers' compensation death benefits alleging that he died from mesothelioma due to asbestos exposure while working for his last employer, Eastman Kodak Company (hereinafter Kodak), where he worked from 1967 to 1985. Kodak and its workers' compensation carrier (hereinafter collectively referred to as the carrier) controverted the claim and, in the alternative, sought to apportion liability for the claim between itself and decedent's prior employer, International Paper Company, pursuant to Workers' Compensation Law § 44. International Paper also controverted the claim and opposed apportionment. A Workers' Compensation Law Judge denied the carrier's apportionment request and, upon review, the Workers' Compensation Board affirmed, finding that there was insufficient evidence to support a finding that decedent contracted mesothelioma while working for International Paper. The carrier appeals.
We affirm. As is pertinent here, Workers' Compensation Law § 44 states that, when a worker's disability due to an occupational disease is established and benefits are awarded, "[t]he total compensation due shall be recoverable from the employer who last employed the employee in the employment to the nature of which the disease was due and in which it was contracted. If, however, such disease . . . was contracted while such employee was in the employment of a prior employer, the employer who is made liable for the total compensation . . . may appeal to the [B]oard for an apportionment of such compensation among the several employers who since the contraction of such disease shall have employed such employee in the employment to the nature of which the disease was due" ([emphases added]; see Workers' Compensation Law § 2 [15]). "Importantly, liability under this provision is premised upon employment at the time of or following the contraction of the compensable occupational disease, not upon the disablement that ensues" (Matter of Polifroni v Delhi Steel Corp., 46 AD3d 970, 971 [2007]; see Matter of Manocchio v ABB Combustion Eng'g, 150 AD3d 1343, 1344 [2017]; Matter of Kuczynski v Trinity Foundry, 128 AD3d 1289, 1290 [2015]; Matter of Good v Town of Brutus, 111 AD3d 1016, 1017 [2013]; Matter of Fazzary v Niles, 89 AD3d 1187, 1188 [2011]). The determination of when an employee contracted the disease, which refers to "when the disease process begins, as evidenced by symptoms, diagnosis or other medical evidence that shows [that the] disease process must have existed" (Employer: North Star Trucking Co., 2015 WL 5711247, *3, 2015 NY Wrk Comp LEXIS 7960, *7 [WCB No. G049 8471, Sept. 29, 2015]), is a question of fact to be determined by the Board, which will be upheld if supported by substantial evidence (see Matter of Manocchio v ABB Combustion Eng'g, 150 AD3d at 1345).
The carrier argues that the evidence established that decedent was exposed to asbestos at both Kodak and International Paper and that cumulative exposure at both caused mesothelioma and, thus, the Board should have ordered apportionment. However, the record reflects that decedent died in November 2013 from mesothelioma, 46 years after leaving his employment with International Paper. His death was caused by malignant mesothelioma due to asbestos exposure, and severe, chronic obstructive pulmonary disease [FN1] caused by decades of smoking. Significantly, decedent was not treated for or diagnosed with mesothelioma until 2013. The medical reports from the pulmonary physician who evaluated decedent in mid-2013 reflect that he complained of shortness of breath that had progressively worsened over the prior seven years, and that he had an abnormal chest X ray in 2012. As of August 2013, pathology reports from a lung biopsy reflect that a tumor tested positive for malignancy, consistent with malignant mesothelioma, and, based upon decedent's reported exposure to asbestos back to 1946, malignant mesothelioma was suspected and ultimately diagnosed. Claimant's medical consultant, Jerrold Abraham, a pathologist, reviewed decedent's medical records and concluded, based upon his history of asbestos exposure at both Kodak and International Paper, that his cumulative exposure to asbestos caused his malignant mesothelioma and death. Another consultant retained by claimant, Donald Jacob, also reviewed decedent's medical records and concluded that, if the records and testimony were accurate, decedent's mesothelioma "was causally related to asbestos exposure during the course of his employment at International Paper and . . . Kodak."
The record supports the Board's conclusion that the evidence failed to establish that decedent contracted mesothelioma during his employment with International Paper, which ended in 1967, or that he experienced any symptoms of this disease during that prior employment, and he was not diagnosed with the disease until 2013. None of the medical evidence or opinions established when, prior to diagnosis, the disease was contracted, and there was no objective medical evidence that the disease process began during decedent's employment with International Paper, only evidence of unquantified exposure during the prior employment (see Matter of Scuderi v Mazzco Enters., 139 AD3d 1138, 1139 [2016]; Matter of Good v Town of Brutus, 111 AD3d at 1017; Matter of Walton v Lin-Dot, 85 AD3d 1413, 1414 [2011]). While the Board recognized that there may be a delay of up to 50 years between exposure to asbestos and a mesothelioma diagnosis, it correctly found that the medical opinions that decedent's prior employment contributed to his condition were speculative and insufficient (see Matter of Manocchio v ABB Combustion Eng'g, 150 AD3d at 1344-1345). To that end, the medical opinions failed to support a finding that the "disease process must have existed" and "the disease must necessarily have been contracted during [decedent's] prior employment" (Employer: North Star Trucking Co., 2015 WL 5711247 at *3). As the Board's decision to not apportion the claim is supported by substantial evidence, it will not be disturbed.
Garry, P.J., Clark, Devine and Colangelo, JJ., concur.
ORDERED that the decision is affirmed, without costs.



Footnotes

Footnote 1: Decedent was diagnosed with COPD in approximately 1993 and, as a result, became oxygen dependent in 2012.