Matter of Lewandowski v Safeway Envtl. Corp. (2021 NY Slip Op 00072)





Matter of Lewandowski v Safeway Envtl. Corp.


2021 NY Slip Op 00072


Decided on January 7, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 7, 2021

531185

[*1]In the Matter of the Claim of Zdzislaw Lewandowski, Appellant,
v
Safeway Environmental Corp. et al., Respondents. Workers' Compensation Board, Respondent.

Calendar Date: December 17, 2020

Before: Lynch, J.P., Clark, Mulvey, Pritzker and Colangelo, JJ.


Geoffrey Schotter, New York City, for appellant.
Burke, Conway & Stiefeld, White Plains (Michelle Piantadosi of counsel), for Safeway Environmental Corp. and another, respondents.



Colangelo, J.
Appeal from a decision of the Workers' Compensation Board, filed September 12, 2019, which, among other things, disallowed claimant's claim for chronic obstructive pulmonary disease.
For a portion of the summer of 2002, claimant, then a member of an asbestos union, participated in cleanup operations at the World Trade Center site. He was later advised by a union doctor in 2004 that he had certain lung, stomach and psychiatric problems as a result of that participation. Claimant continued his union work thereafter until May 8, 2015, at which time he stopped working due to panic attacks triggered by observing steel I-beams. He then filed a claim for workers' compensation benefits, asserting that he suffered from depression, breathing problems, gastroesophageal reflux disease (hereinafter GERD) and rhinitis as a result of his World Trade Center cleanup work (see generally Workers' Compensation Law art 8-a). Based on the reports of several of claimant's physicians, a Workers' Compensation Law Judge (hereinafter WCLJ) determined that there was prima facie medical evidence of chronic obstructive pulmonary disease (hereinafter COPD), GERD and posttraumatic stress disorder (hereinafter PTSD).
Claimant was then examined by a physician hired by the employer and its workers' compensation carrier (hereinafter collectively referred to as the carrier), and certain of the parties' respective medical experts were deposed. The physician who diagnosed claimant with COPD and GERD — who had admittedly examined claimant only once, on December 4, 2015, before his treatment was taken over by a nurse practitioner — opined that claimant's exposures at the World Trade Center site contributed to his development of COPD and GERD notwithstanding claimant's 32-year history of smoking approximately one pack of cigarettes per day. In contrast, the consultant hired by the carrier opined that claimant had no lung disease or demonstrable pulmonary disability, adding that, if there were any objective evidence of COPD, it would be attributable to claimant's cigarette smoking. The carrier's consultant further opined that any psychiatric status was a minor contributor to claimant's disability, which the consultant believed was caused by an unrelated peripheral vascular disease.
In an April 28, 2016 reserved decision, the WCLJ disallowed the claim in its entirety, finding the opinion of the carrier's consultant more credible than that of claimant's physician and concluding that claimant failed to demonstrate a causal relationship between his respiratory symptoms and his limited time working at the World Trade Center site. The WCLJ further found that the few references to psychiatric conditions in the Board's file did not constitute prima facia medical evidence of such a condition. The Workers' Compensation Board modified the WCLJ's decision in a decision filed September 12, 2016, rescinding the WCLJ's disallowance of the claim, finding that there was sufficient credible [*2]evidence of causally-related GERD and observing that it had already been determined that claimant indeed put forth prima facia medical evidence of PTSD. The Board, however, agreed with the WCLJ's assessment that there was insufficient credible medical evidence of causally-related COPD, given claimant's significant history of smoking and the fact that claimant's physician examined him only once and, on that occasion, claimant's diagnostic test results were equivocal. The matter was continued for development of the record as to the applicability of Workers' Compensation Law article 8-a and any other issues regarding compensability, as well as the causal relationship of claimant's PTSD to his World Trade Center work.
By reserved decision filed January 24, 2017, the claim was established for GERD and PTSD with a July 1, 2002 date of accident, the date that claimant last participated in World Trade Center cleanup operations (see Workers' Compensation Law § 166), and an April 27, 2009 date of disablement, the date of claimant's first documented treatment.[FN1] The Board later modified that decision and, in relevant part, rescinded the establishment of PTSD, without prejudice, and established the claim for agoraphobia with panic disorder. By decision filed February 28, 2017, claimant's average weekly wage was set, without prejudice, per the April 27, 2009 date of disablement. After nearly two years of further development of the record, prima facie medical evidence of COPD was again found, based on an April 2017 report from the same physician who originally diagnosed claimant, and the claim was also amended to include PTSD. By reserved decision filed February 4, 2019, the claim was amended to include COPD, and the same WCLJ who previously found the carrier's consultant to be more credible now elected to credit the opinion of claimant's physician as reflected in the April 2017 report.
In February 2019, claimant filed a request for further action seeking to revise his average weekly wage and reconsideration of certain awards. At the hearing that followed, claimant requested that his average weekly wage be adjusted based on the 2015 payroll documents in the Board's file and that his date of disablement be modified to December 4, 2015 — the date of the first recorded finding of causally-related disability. The WCLJ declined both requests, noting that neither average weekly wage nor date of disablement were ever challenged. A decision memorializing that conclusion was filed on March 19, 2019.
Administrative appeals ensued. The carrier appealed to the Board from the February 4, 2019 reserved decision, arguing that the claim should not have been amended to include COPD given that the issue was previously decided and no new medical documentation was put forth to support a different finding as to causal relationship. Claimant appealed to the Board from the March 19, 2019 decision, arguing that, because his average weekly wage was originally set without [*3]prejudice and because no consideration was given to the requirement that the date of disablement most beneficial to him be selected (see Workers' Compensation Law § 164), the WCLJ erred in declining his requests to modify the foregoing. The Board first agreed with the carrier and disallowed the claim for COPD. Noting that the finding of insufficient credible medical evidence of causally-related COPD was administratively affirmed in September 2016, the Board concluded that the subsequent medical reports offered by claimant did not contain any further explanation as to causal relationship so as to warrant a different result. As to claimant's appeal, the Board concluded that the request for modification of the date of disablement was not properly before the WCLJ, given that the date was never challenged when it was set. Construing claimant's appeal as an application for rehearing or reopening, and finding that claimant did not allege any change in condition or new evidence regarding the date of disablement (see 12 NYCRR 300.14 [a]), the Board concluded that reopening the issue in the interest of justice was not warranted given that claimant, who was represented throughout the development of his claim, failed to challenge the date when it was set two years prior and further failed to articulate any explanation for that failure. The Board therefore also denied claimant's request to revisit his average weekly wage inasmuch as it was premised upon an adjusted date of disablement. Claimant appeals.
Turning first to the Board's disallowance of the claim for COPD, claimant initially asserts that the Board misconstrued the disposition of the September 2016 decision. In claimant's view, because the Board, in the September 2016 decision, rescinded the disallowance of his entire claim, the September 2016 finding of insufficient evidence of causally-related COPD was merely akin to a finding that prima facia medical evidence had not yet been presented; according to claimant, this is the very reason that the WCLJ entertained the COPD claim again in 2019. Claimant goes on to argue that the Board, in the appealed from decision, essentially gave the September 2016 decision preclusive effect when it found that the post-2016 reports of claimant's physician did not contain any further explanation as to causal relationship. We are not persuaded by claimant's arguments.
Initially, although the Board, in its September 2016 decision, did not expressly decree that the claim for COPD was disallowed, it clearly found that there was no causally-related COPD. Inasmuch as causal relationship is required to establish a claim for workers' compensation benefits (see Workers' Compensation Law § 10 [1]; see also Workers' Compensation Law § 2 [7]; Matter of Johannesen v New York City Dept. of Hous. Preserv. & Dev., 84 NY2d 129, 134 [1994]), a finding of no causal relationship is a finding that the claim is not compensable (see Matter of De La Cruz v Aufiero Painting Indus[*4]. Inc., 185 AD3d 1330, 1330 [2020]; Matter of Scriven v Davis Ulmer Sprinkler Co., 183 AD3d 1098, 1099 [2020]; Matter of Johnson v New York City Tr. Auth., 182 AD3d 970, 971-972 [2020]), or, in other words, that the claim must be disallowed. Unlike a finding of no prima facie medical evidence, nothing in the Workers' Compensation Law or the Board's regulations provides a claimant with an automatic entitlement to present additional information after a finding of no causal relationship (compare 12 NYCRR 300.38 [g] [3] [ii], with 12 NYCRR 300.14 [a], [b]).[FN2] In any event, the Board did not give unwarranted effect to the September 2016 decision regarding the sufficiency of the medical evidence concerning causally-related COPD. Given the lack of judicial appeal therefrom, the Board was free to rely on its prior findings concerning the sufficiency of the medical evidence submitted by claimant prior to September 2016. Nor did the Board "collaterally estop[]" claimant from relying on his physician's more recent medical reports. Quite to the contrary, the Board expressly considered the post-2016 evidence presented by claimant regarding his claim for COPD and determined that establishment of the claim was still unwarranted because of a lack of causal relationship. It was therefore entirely within the Board's province to disallow the claim for COPD. To the extent that claimant can be said to be challenging the substantial evidence supporting that disallowance, it is well established that, "[a]lthough the medical opinion evidence relied upon by the Board to demonstrate the existence of a causal relationship does not need to be expressed with absolute or reasonable medical certainty, it must signify a probability of the underlying cause that is supported by a rational basis and not be based upon a general expression of possibility" (Matter of Johnson v Borg Warner, Inc., 186 AD3d 1772, 1773 [2020] [internal quotation marks and citations omitted]; see Matter of Miller v National Cabinet Co., 8 NY2d 277, 282-283 [1960]; Matter of Wen Liu v Division of Gen. Internal Medicine, Mount Sinai Sch. of Medicine, 186 AD3d 1770, 1771 [2020], lv denied ___ NY3d ___ [Dec. 22, 2020]). Based on our review of the record, the Board's decision to disallow the claim for COPD for lack of causal relationship was supported by substantial evidence.
We agree, however, with claimant that his date of disablement and average weekly wage should be revisited. To be sure, the decision to grant an application for reopening or rehearing in the interest of justice is a matter left to the Board's discretion (see 12 NYCRR 300.14 [a] [3]; Matter of Carrasquillo v Kiska Constr., Inc., 181 AD3d 1144, 1145 [2020]; Matter of Kariauli v Weider, 175 AD3d 1757, 1758 [2019]). Similarly, the Board ordinarily has great latitude in setting a date of disablement, which date may acceptably reflect "the first date of causally related treatment, the date on which the claimant first received a diagnosis [*5]indicating that the condition was work related, the date on which the claimant began to lose time from work due to the work-related disability, the date on which the claimant was advised by a physician to stop working due to the work-related disability, and the date on which the claimant actually stopped working because of that disability" (Employer: Pumping Sols. Inc., 2015 WL 5026401, *3-5, 2015 NY Wrk Comp LEXIS 8695, *9-13 [WCB No. G076 9490, Aug. 13, 2015]; see Workers' Compensation Law § 42; Matter of Garcia v MCI Interiors, Inc., 158 AD3d 907, 909 [2018]; Matter of Bunn v Wegmans Food Mkts., Inc., 130 AD3d 1133, 1134 [2015]). However, when it comes to disablement of an individual who participated in the World Trade Center rescue, recovery or cleanup operations, the Board is statutorily required to select "the date of disablement that is most beneficial to the claimant" (Workers' Compensation Law § 164). Here, there is no indication in the record before us that this section was considered in either selecting April 27, 2009 or in denying the subject request to modify that date in the interest of justice (see e.g. Employer: NYC Transit Auth., 2016 WL 4594386, *2-4, 2016 NY Wrk Comp LEXIS 8610, *6-12 [WCB No. 0070 3073, Aug. 25, 2016; Employer: Con. Edison, 2016 WL 1272708, *3-5, 2016 NY Wrk Comp LEXIS 2711, *10-12 [WCB No. G118 0473, Mar. 25, 2016]; Employer: Verizon New York Inc., 2013 WL 2450257, *2, 2013 NY Wrk Comp LEXIS 5130, *3-4 [WCB No. G030 7859, May 30, 2013]; Employer: Frawley Bureau of Investigation, 2011 WL 4847612, *2-3, 2011 NY Wrk Comp LEXIS 9040, *4-9 [WCB No. G019 1364, Oct. 4, 2011]). In light of the foregoing statutory mandate, we find that it was an abuse of discretion not to consider claimant's requests. We also observe that claimant's average weekly wage was set without prejudice, creating no bar to revisiting that related issue. The matter is therefore remitted to the Board for consideration of the date of disablement most beneficial to claimant and any attendant issues, such as his average weekly wage (see generally Employer: Pinnacle Enviromental Corp., 2016 WL 7010172, *2-3, 2016 NY Wrk Comp LEXIS 11822, *3-9 [WCB No. 0074 8333, Nov. 22, 2016]; Employer: WTC Volunteer C/O, 2009 WL 525479, *2, 2009 NY Wrk Comp LEXIS 5440, *2-5 [WCB No. 0080 5624, Feb. 20, 2009]).
Lynch, J.P., Clark, Mulvey and Pritzker, JJ., concur.
ORDERED that the decision is modified, without costs, by reversing so much thereof as denied claimant's request to modify his date of disablement and adjust his average weekly wage; matter remitted to the Workers' Compensation Board for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.



Footnotes

Footnote 1: A claimant's last day of participation in World Trade Center cleanup operations within the qualifying period set forth in Workers' Compensation Law § 161 is deemed the date of accident for the purpose of determining which carrier has insurance coverage of the claim (see Workers' Compensation Law § 166). However, "[t]he claimant's awards are still to be computed in accordance with the statutory benefit rates in effect on the claimant's date of disablement, as there is no statutory provision [that] specifically provides otherwise" (Employer: Telesector Resources Group Inc., 2014 WL 4424800, *3, 2014 NY Wrk Comp LEXIS 6193, *7 [WCB No. G051 1888, Sept. 9, 2014]; see generally Workers' Compensation Law § 164).

Footnote 2: That said, the compensability of claimant's COPD claim was revisited here, and there does not appear to have been a motion to reopen the COPD claim. Notably, the carrier did not object to the January 2019 finding of prima facia medical evidence of COPD.